Timothy A. Scott (SBN 215074)
Lauren M. Williams (SBN 306918)
MCKENZIE SCOTT PC
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0451
Facsimile: (619) 652-9964
Email: tscott@mckenziescott.com
         lwilliams@mckenziescott.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROOKIE ROCHA,<br><br>    Plaintiff,<br><br>V.<br><br>CITY OF SAN DIEGO; SDPD OFFICERS MICHAEL HAGEN (#1148); FROST GAY (#7965); DOMINIC LAZAGA (#7852); JOHN MCGILL (#6951); ROBERT TROUSAS (#7949); GERALD UZURRAGA (#6458); BENJAMIN HALL (#7516); DAVID GARREN (#5945 ); ANTHONY TAYLOR (#1489); JORGE VERDUZCO (#7619); MATTHEW WILKIN (#7869); JOSE VELASQUEZ (#7737); O'LEARY RAMOS (#1331); GREGORY YOSENICK (#1074); GARETT KAIN (#7718),<br><br>    Defendants. | Case No.: **'23CV0885 CAB JLB**<br><br>**COMPLAINT FOR DAMAGES FOR:**<br>1. **42 U.S.C. § 1983: FAILURE TO PROVIDE MEDICAL CARE;**<br>2. **CONVERSION;**<br>3. **NEGLIGENCE.**<br><br>**DEMAND FOR JURY TRIAL.** |

1
COMPLAINT

# INTRODUCTION

1. Plaintiff Brookie Rocha is a licensed vocational nurse with no criminal history. Ms. Rocha was pepper-sprayed and then arrested by San Diego Police after she tried to protect her daughter from being physically assaulted in a Gaslamp pub. No charges were filed, as Plaintiff had committed no crime. But despite deploying Oleoresin Capsicum ("OC")/pepper-spray in her face, the City admits that its officers never provided Plaintiff medical care as she suffered in pain. Additionally, a San Diego police officer wrongfully took Ms. Rocha's diamond necklace, and never returned it—something else that the City doesn't dispute.

An internal affairs investigation has already found Plaintiff's factual complaints to be "sustained," and San Diego's Office of the Commission on Police Practices has admitted the same to be true. *See* Exhibit A, attached. Nevertheless, the City has denied Plaintiff's tort claim without further explanation.

This complaint follows.

# JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts causes of action for constitutional violations arising under 42 U.S.C. § 1983.

3. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. On March 29, 2022, Plaintiff mailed a timely tort claim pursuant to the California Tort Claims Act (Cal. Gov. Code §§ 810-996.6) against the City of San Diego. On April 19, 2022, the City acknowledged receipt of the claim. In a letter dated November 17, 2022, the Claims Division rejected the claim.

2
COMPLAINT

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arise out of events and omissions occurring in the County of San Diego, which is situated in the Southern District of California.

**PARTIES**

5. Plaintiff BROOKIE ROCHA was, at all times relevant to this lawsuit, a resident of the State of California, and a citizen of the United States.

6. Defendant CITY OF SAN DIEGO (hereinafter "City") is a governmental entity organized and existing under the laws of the State of California. The San Diego Police Department is organized under, and part of, the City of San Diego.

7. Defendant SDPD Officer MICHAEL HAGEN (#1148) at all times relevant herein, was an officer with SDPD, was an employee of SDPD, and was acting within the scope of his employment.

8. Defendant SDPD Officer FROST GAY (#7965) at all times relevant herein, was an officer with SDPD, was an employee of SDPD, and was acting within the scope of his employment.

9. Defendant SDPD Officer DOMINIC LAZAGA (#7852) at all times relevant herein, was an officer with SDPD, was an employee of SDPD, and was acting within the scope of his employment.

10. Defendant SDPD Officer JOHN MCGILL (#6951) at all times relevant herein, was an officer with SDPD, was an employee of SDPD, and was acting within the scope of his employment.

11. Defendant SDPD Officer ROBERT TROUSAS (#7949) at all times relevant herein, was an officer with SDPD, was an employee of SDPD, and was acting within the scope of his employment.

12. Defendant SDPD Officer GERALD UZURRAGA (#6458) at all times relevant herein, was an officer with SDPD, was an employee of SDPD, and was acting within the scope of his employment.

13. Defendant SDPD Officer DOMINIC LAZAGA (#7852) at all times relevant herein, was an officer with SDPD, was an employee of SDPD, and was acting within the scope of his employment.

14. Defendant SDPD Officer BENJAMIN HALL (#7516) at all times relevant herein, was an officer with SDPD, was an employee of SDPD, and was acting within the scope of his employment.

15. Defendant SDPD Officer DAVID GARREN (#5945) at all times relevant herein, was an officer with SDPD, was an employee of SDPD, and was acting within the scope of his employment.

16. Defendant SDPD Officer ANTHONY TAYLOR (#1489) at all times relevant herein, was an officer with SDPD, was an employee of SDPD, and was acting within the scope of his employment.

17. Defendant SDPD Officer JORGE VERDUZCO (#7619) at all times relevant herein, was an officer with SDPD, was an employee of SDPD, and was acting within the scope of his employment.

18. Defendant SDPD Officer MATTHEW WILKIN (#7869) at all times relevant herein, was an officer with SDPD, was an employee of SDPD, and was acting within the scope of his employment.

19. Defendant SDPD Officer JOSE VELASQUEZ (#7737) at all times relevant herein, was an officer with SDPD, was an employee of SDPD, and was acting within the scope of his employment;

20. Defendant SDPD Officer O'LEARY RAMOS (#1331); at all times relevant herein, was an officer with SDPD, was an employee of SDPD, and was acting within the scope of his employment;

21. Defendant SDPD Officer GREGORY YOSENICK (#1074) at all times relevant herein, was an officer with SDPD, was an employee of SDPD, and was acting within the scope of his employment;

22. Defendant SDPD Officer GARETT KAIN (#7718) at all times relevant herein, was an officer with SDPD, was an employee of SDPD, and was acting within the scope of his employment.[1]

## FACTUAL ALLEGATIONS

23. On the evening of March 5, 2022, Plaintiff and her daughter, Katie Lynn Ward, were present at Henry's Pub on 5th Avenue in the Gaslamp District of San Diego.

24. During the evening, Plaintiff's daughter suffered harassment and threats from third-party females at Henry's, and became involved an altercation with them.

25. Plaintiff attempted to intervene to prevent harm to her daughter and to others.

26. Defendant City of San Diego police officers responded to the scene.

---

[1] For purposes of this complaint, the individual officers named in paragraphs 7-22 above will hereafter be collectively described as "the Individually Named Officers."

27. According to a Call for Service document generated by the City (Event ID E22030007846), the following officers were present during the incident or its aftermath:

    a. SD7949 - TROUSAS, ROBERT 'DALTON',
    b. SD7852 - LAZAGA, DOMINIC,
    c. SD6458 - UZARRAGA, GERALD
    d. SD7516 - HALL, BENJAMIN
    e. SD5945 - GARREN, DAVID
    f. SD1489 - TAYLOR, ANTHONY
    g. SD7619 - VERDUZCO, JORGE
    h. SD7869 - WILKIN, MATTHEW
    i. SD7737 - VELASQUEZ, JOSE
    j. SD1331 - RAMOS, OLEARY
    k. SD1074 - YOSENICK, GREGORY
    l. SD7718 - KAIN, GARETT
    m. SD1148 - HAGEN, MICHAEL
    n. SD6951 - MCGILL, JOHN

28. An SDPD Officer used force against Katie Lynn Ward in that he sprayed her with Oleoresin Capsicum (OC) "pepper spray."

29. An SDPD Officer used force against Plaintiff Brookie Rocha in that he sprayed Plaintiff with Oleoresin Capsicum (OC) "pepper spray."

30. OC pepper spray is a liquid chemical agent.

31. OC pepper spray, by design, causes intense burning to skin, eyes, and mucous membranes, causes respiratory distress to all persons exposed to it, and can cause life-threatening respiratory distress in persons who are allergic to the spray, and/or when OC spray is left untreated.

32. Each named defendant has been trained in how to use OC pepper spray in the normal course of their police duties, and how to treat persons who have been exposed to OC pepper spray.

33. Each named individual defendant has been trained that "1. Any Department member who uses a liquid chemical agent *shall ensure that appropriate treatment is administered*." San Diego Police Department Procedure 1.06, "Use of Liquid Chemical Agent" (emphasis provided.)

34. Procedure 1.06 continues:

"2. Any member who uses a liquid chemical agent shall render first aid according to the following manufacturer's guidelines:

    a. Flush the subject's eyes with large amounts of cool water;

    b. Expose the subject's face and eyes to fresh air;

    c. If contact lenses are worn, have the subject or qualified medical personnel remove them. Contacts may be contaminated and require discarding;

    d. Avoid rubbing the contaminated area; and,

    e. Do not apply creams, salves, oils, or lotions as they may trap the agent on the skin.

3. First aid treatment should be rendered as soon as possible. It must be done within 30 minutes of applying the chemical agent unless exigent circumstances make the treatment impractical. If the subject voices objection or physically resists, the officer shall make a reasonable attempt to persuade the subject to allow decontamination prior to transporting from the scene.

4. Officers shall document, in the appropriate report, the type of first aid given (and/or attempted) and the time it was rendered.

    5. The arresting or transporting officer shall inform receiving personnel at County Jail, Juvenile Hall, or the San Diego County Psychiatric Hospital whenever a liquid chemical agent has been used on a subject being admitted. The officer shall also advise whether first aid was administered."

35. Every individually named officer at the scene was aware of the requirements of San Diego Police Procedure 1.06 as set forth above.

36. Every individually named officer at the scene has been trained, or should have been trained, that failure to provide medical treatment after use of pepper spray is unconstitutional under clearly established case law. *See e.g. LaLonde v. Cnty. of Riverside,* 204 F.3d 947, 961 (9th Cir. 2000) (reversing grant of qualified immunity to police officers who failed to provide medical treatment after deploying pepper spray).

37. Every individually named officer at the scene was trained, or should have been trained, that "in a situation in which an arrestee surrenders and is rendered helpless, any reasonable officer would know that a continued use of [pepper spray] or a refusal without cause to alleviate its harmful effects constitutes excessive force." *Id.* at 961.

38. SDPD police officers took Plaintiff into custody and transported her to jail after she had been exposed to OC pepper spray.

39. Plaintiff informed the Individually Named Officers at the scene that she was suffering from the effects of the pepper spray and needed medical assistance.

40. Plaintiff informed the Individually Named Officers that she was suffering an allergic reaction from the pepper spray.

41. Plaintiff repeatedly requested that she be permitted to use her EpiPen to treat her allergic reaction and provide relief from the effects of the OC pepper spray.

42. Defendants did not allow Plaintiff to use her EpiPen.

43. Defendant TROUSAS did not render medical assistance or first aid to Plaintiff after she was subjected to pepper spray within the meaning of Procedure 1.06.

44. Defendant LAZAGA did not render medical assistance or first aid to Plaintiff after she was subjected to pepper spray within the meaning of Procedure 1.06.

45. Defendant UZARRAGA did not render medical assistance or first aid to Plaintiff after she was subjected to pepper spray within the meaning of Procedure 1.06.

46. Defendant HALL did not render medical assistance or first aid to Plaintiff after she was subjected to pepper spray within the meaning of Procedure 1.06.

47. Defendant GARREN did not render medical assistance or first aid to Plaintiff after she was subjected to pepper spray within the meaning of Procedure 1.06.

48. Defendant TAYLOR did not render medical assistance or first aid to Plaintiff after she was subjected to pepper spray within the meaning of Procedure 1.06.

49. Defendant VERDUZCO did not render medical assistance or first aid to Plaintiff after she was subjected to pepper spray within the meaning of Procedure 1.06.

50. Defendant VELASQUEZ did not render medical assistance or first aid to Plaintiff after she was subjected to pepper spray within the meaning of Procedure 1.06.

51. Defendant RAMOS did not render medical assistance or first aid to Plaintiff after she was subjected to pepper spray within the meaning of Procedure 1.06.

52. Defendant KAIN did not render medical assistance or first aid to Plaintiff after she was subjected to pepper spray within the meaning of Procedure 1.06.

53. Defendant HAGEN did not render medical assistance or first aid to Plaintiff after she was subjected to pepper spray within the meaning of Procedure 1.06.

54. Defendant MCGILL did not render medical assistance or first aid to Plaintiff after she was subjected to pepper spray within the meaning of Procedure 1.06.

55. SDPD officers claimed, inaccurately, that Plaintiff engaged in assaultive behavior during the altercation at Henry's Pub in San Diego's Gaslamp Quarter.

56. SDPD officers submitted paperwork recommending that criminal charges be brought against Plaintiff.

57. After reviewing the evidence, neither the District Attorney's Office nor the City Attorney filed any charges against Ms. Rocha.

58. Ms. Rocha is a licensed nurse and has been for years.

59. After reviewing the evidence in the case, the licensing board declined to seek any disciplinary action against Plaintiff either.

60. During Plaintiff's detention and arrest, the City of San Diego, by and through its officers, removed a diamond pendant from Plaintiff's person without her consent.

61. Though Plaintiff did not resist the necklace's removal, its removal was involuntary as part of the booking process.

62. That is, Plaintiff did not consensually donate her diamond necklace to the City of San Diego.

63. The City of San Diego has, or should have, specific procedures and practices in place to properly collect, inventory, store, and return personal property that belongs to criminal detainees and defendants.

64. The City of San Diego, by and through its officers, did not follow those specific procedures and practices in this case.

65. After Plaintiff was released from custody with no charges filed, the City of San Diego, by and through its police department, did not return Plaintiff's diamond necklace to her.

66. Plaintiff has been permanently deprived of her diamond necklace.

67. The diamond necklace has sentimental value to Plaintiff, and the process of it being taken from her, and wrongfully never returned, has caused emotional damage to Plaintiff.

68. Plaintiff filed a complaint with the police department that was reviewed by San Diego's Office of the Commission on Police Practices, as Case # 2002-0146.

69. According to its own documents, the Commission (or CPP) is empowered by San Diego City Charter Section 41.2 to review citizens' complaints against City police officers.

70. The Commission reviewed an Internal Affairs Report regarding Ms. Rocha's treatment by San Diego police officers.

71. Internal Affairs "sustained" Ms. Rocha's complaint that San Diego police officers *did not* render first aid after an officer sprayed Ms. Rocha with OC spray.

72. The CPP agreed with Internal Affairs' finding that San Diego police officers *did not* render first aid after an officer sprayed Ms. Rocha with OC spray.

73. Internal Affairs "sustained" Ms. Rocha's complaint that officers did not property itemize and inventory Ms. Rocha's diamond necklace, and that the item was never returned to her.

74. The CPP agreed with Internal Affairs' finding that officers did not properly itemize and inventory Ms. Rocha's diamond necklace, and that the item was never returned to her.

75. A true and correct copy of these findings are attached as Exhibit A to this complaint.

76. Ms. Rocha timely filed a tort claim with the City of San Diego, seeking compensation for the "lost" diamond necklace.

77. Despite Internal Affairs' findings, and the CPP's findings, and despite the City's obligation to deal honestly with community members that it governs, the City has denied Ms. Rocha's tort claim without explanation.

78. This Complaint follows.

//
//
//
//

# I.

# FIRST CAUSE OF ACTION

**42 U.S.C. § 1983: Fourteenth Amendment Deliberate Indifference to Medical Need**

**(vs. all Individually Named Officers)**

79. Plaintiff alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

80. Defendant Individually Named Officers knew or should have known that OC pepper spray had been used against Plaintiff.

81. Defendant Individually Named Officers knew that Plaintiff was being detained and was in the custody (and thus the care) of the San Diego Police Department.

82. Defendant Individually Named Officers knew or should have known that any person who has been subjected to OC Pepper Spray requires medical treatment and first aid.

83. Defendant Individually Named Officers also knew or should have known that Plaintiff specifically asked for medical treatment, and did so repeatedly.

84. Defendant Individually Named Officers also knew or should have known that Plaintiff was suffering an allergic reaction from the pepper spray.

85. Defendant Individually Named Officers, and each of them, made a deliberate decision to refuse medical treatment to Plaintiff, despite her clear medical need, despite clear Procedures requiring medical treatment, and despite a constitutional duty to provide this treatment to a person in distress, as Plaintiff was.

86. The actions and omissions by Individually Named Officers constituted objective and subjective deliberate indifference to Plaintiff's medical needs and a violation of her rights under the Fourteenth Amendment.

87. Defendant Individually Named Officers made intentional decisions and omissions regarding the denial of adequate medical care, including but not limited to:

   a. Deciding not to provide Plaintiff with first aid immediately after pepper spray was used on her.
   b. Deciding not to provide Plaintiff with first aid even after she complained that she was in pain and suffering from the effects of the pepper spray.
   c. Consciously disregarding Plaintiff's statements that she was suffering an allergic reaction and that she needed to use her EpiPen.
   d. Ignoring Plaintiff's complaints instead.
   e. Detaining Plaintiff at the scene, still refusing to treat her for pepper spray.
   f. Transporting Plaintiff in custody, still refusing to treat her for pepper spray.
   g. Failing to properly document the use of pepper spray, the provision of medical treatment, and the lack of medical treatment, as required by San Diego City Police Department Policy.

88. Defendants' conduct and omissions constituted violations of their own policies and procedures, and again, were intentional and/or reckless and/or deliberately indifferent to Plaintiff's constitutional rights.

89. Defendants' deliberate indifference was an actual and proximate cause of Plaintiff's damages.

90. Plaintiff also seeks punitive damages on the grounds that Defendant Individually Named Officers acted with deliberate and reckless disregard of Plaintiff's constitutional rights.

91. Plaintiff is entitled to costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

## II.
## SECOND CAUSE OF ACTION
### Conversion.

92. Plaintiff alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

93. Plaintiff owned, possessed, and had a right to possess a diamond necklace.

94. The City of San Diego, by and through its police officers, substantially interfered with Plaintiff's possession of that diamond necklace by knowingly and intentionally removing it from her person; preventing Plaintiff from having access to it; failing to keep it safe and accessible; and failing to return it to Plaintiff despite her request.

95. Plaintiff did not consent to the conversion of her property.

96. Plaintiff was harmed, both financially and emotionally.

97. Defendant City of San Diego's conduct was a substantial factor in causing Plaintiff's harm.

//
//
//
//
//

# III.

# THIRD CAUSE OF ACTION

### Negligence.

89. Plaintiff alleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

90. Defendant City of San Diego owed Plaintiff a duty of reasonable care to safekeep her personal property that it took from her, without permission, during booking.

91. As alleged above, Defendant City of San Diego, by and through its officers, breached that duty, permanently depriving her of valuable personal property that also has sentimental value.

92. The City of San Diego is vicariously liable for the conduct of its officers and agents, both named and unnamed here, for their acts and omissions regarding Plaintiff's property, regarding hiring and supervision of its officers and agents, and regarding property policy and procedure more generally that proximately caused Plaintiff's losses.

93. Plaintiff's losses were foreseeable results of Defendant City of San Diego's negligence.

94. Defendant City of San Diego's negligence was the actual and proximate cause of Plaintiff's damages.

### PRAYER FOR RELIEF

Plaintiff prays for judgment against defendants as follows:

    a. General and compensatory damages in an amount according to proof;

    b. Punitive and exemplary damages against all individual defendants;

      c. Civil penalties as provided by law;
      d. Costs and reasonable attorney fees pursuant to 42 U.S.C. § 1988;
      e. All other damages, penalties, costs, and fees as allowed by Cal. Civ. Proc. §§ 377.20, 377.60, 1021.5
      f. And for all other and further relief as permitted by law and supported by the evidence, whether requested specifically in this complaint or not.

DATE: May 15, 2023          MCKENZIE SCOTT, PC

                By: ___*s/ Timothy A. Scott*_____
                    TIMOTHY A. SCOTT
                    LAUREN M. WILLIAMS
                    Attorneys for Plaintiff